313 Ga. 730
FINAL COPY

S22A0124. REDDING v. THE STATE.

LaGrua, Justice.

Following a jury trial, Appellant Merrick Redding was found guilty of felony murder and aggravated assault in connection with the death of Joseph Davis, and the trial court denied his motion for new trial. In a prior appeal, this Court held that the evidence presented at Appellant's trial was legally sufficient to support his murder conviction, but we otherwise vacated the trial court's order and remanded the case for the court to make factual findings and legal conclusions regarding Appellant's claim that his constitutional right to a speedy trial was violated; we did not address his other claims. See *Redding v. State*, 309 Ga. 124, 129-130 (3) (844 SE2d 725) (2020) ("*Redding I*").

On remand, the trial court issued an order rejecting the speedy-trial claim, merging the aggravated assault count into the felony murder count, and resentencing Appellant to serve life in

prison without the possibility of parole. Appellant then filed this second appeal, raising his constitutional speedy-trial claim again along with other claims. We conclude that the trial court misstated the law and failed to weigh all of the *Barker*[1] factors in its post-remand order denying Appellant's speedy-trial claim. For these reasons, we vacate the trial court's order and remand the case for the court to again resolve the speedy-trial claim; therefore, we will not address the remaining claims of error.[2]

1. As we explained in *Redding I*,

[t]he record shows that [Appellant] was arrested on September 12, 2016, one week after the [murder]. [Appellant] was granted a bond on March 2, 2017, but he

---

[1] See *Barker v. Wingo*, 407 U.S. 514, 530 (92 SCt 2182, 33 LE2d 101) (1972). See also *Doggett v. United States*, 505 U.S. 647, 652 (112 SCt 2686, 120 LE2d 520) (1992).

[2] Davis died on September 6, 2016. On May 22, 2018, a Muscogee County grand jury indicted Appellant for malice murder, felony murder, and aggravated assault with a "closed fist." At a trial from October 24 to November 5, 2018, the jury found Appellant not guilty of malice murder but guilty of the remaining counts. After Appellant was sentenced, he filed a timely motion for new trial. On May 17, 2019, the trial court held a hearing on the motion for new trial. On June 4, 2019, the trial court denied the motion for new trial. Appellant filed a timely notice of appeal. On June 16, 2020, this Court issued its opinion in *Redding I*. After the trial court resentenced Appellant and rejected his speedy-trial claim, he filed a timely notice of appeal, and the case was docketed to this Court's term beginning in December 2021 and submitted for a decision on the briefs.

apparently was unable to post the bond amount and so remained in jail. On September 28, 2017, [Appellant] filed a "Motion to Dismiss Charge Based on Violation of Constitutional Right to Speedy Trial." At that point, [Appellant] had not yet been indicted, and he noted in his motion that he had repeatedly asked for his case to be presented to a grand jury and that one of the few witnesses to the incident had died. The trial court scheduled a hearing on the motion for November 30, 2017, but, as the State concedes, there is no record that a hearing was held that day. On April 17, 2018, [Appellant] filed a request for a hearing on his speedy[-]trial motion. The trial court held a hearing — apparently on May 9, 2018 — but did not make any ruling at the time of the hearing. [Appellant] was indicted on May 22, 2018, and his trial began on October 29, 2018.

309 Ga. at 128 (3) (footnotes omitted). Several days before trial, the court verbally denied Appellant's speedy-trial motion, but never issued a written order. We note that Appellant also filed a post-indictment statutory speedy-trial demand, and he was tried within the statutory time frame. See OCGA § 17-7-171. After we held in Appellant's first appeal that the trial court had not made the necessary findings and conclusions in the pretrial verbal ruling and remanded the case for that to be done, see *Redding I*, 309 Ga. at 129-130 (3), the court held an evidentiary hearing on October 5, 2020, to

3

reconsider Appellant's speedy-trial motion and later entered a five-page order denying the motion.[3]

2. *The Barker framework*

A constitutional speedy-trial claim is evaluated under the two-part framework set out in *Barker*. See *Redding I*, 309 Ga. at 128 (3). First, the trial court must consider "whether the length of time between the defendant's arrest and trial is sufficiently long to be considered 'presumptively prejudicial.' If not, the speedy-trial claim fails at the threshold." Id. at 129 (3) (citation omitted). A delay of one year or more is typically presumed to be prejudicial. See id. In *Redding I*, we concluded that the presumptive-prejudice threshold was crossed in this case. See id.

---

[3] We note that the transcripts of the May 2018 and October 2020 hearings on the speedy-trial motion were not included in the appellate record. And we remind litigants that

> [w]here the appealing party is the defendant in a felony case, and where the defendant states in his notice of appeal that a transcript is to be transmitted as part of the appellate record, it is the defendant's statutorily mandated duty [under OCGA § 5-6-42] to cause the court reporter to prepare and file an original and one copy of the transcript with the clerk of the trial court within 30 days after the filing of the notice of appeal unless an extension of time is obtained.

*Chancey v. State*, 256 Ga. 415, 435-436 (11) (349 SE2d 717) (1986).

4

When that threshold is crossed, the trial court "proceeds to the second part of the framework, applying a context-focused, four-factor balancing test to determine whether the defendant was denied the right to a speedy trial." *Redding I*, 309 Ga. at 129 (3) (citation and punctuation omitted). "These four factors are (1) the length of the delay; (2) the reasons for it; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant." Id. (citation and punctuation omitted). "This second part of the speedy[-]trial analysis requires courts to engage in a difficult and sensitive balancing process and necessarily compels them to approach speedy[-]trial cases on an ad hoc basis." Id. (citation and punctuation omitted).

"This task is committed principally to the discretion of the trial court, and this Court has a limited role in reviewing the trial court's decision." *Henderson v. State*, 310 Ga. 231, 235 (2) (850 SE2d 152) (2020) (citation and punctuation omitted).

> We must accept the factual findings of the trial court unless they are clearly erroneous, and we must accept the ultimate conclusion of the trial court unless it amounts to

5

an abuse of discretion, even though we might have reached a different conclusion were the issue committed to our discretion.

Id. (citation and punctuation omitted). However,

[i]f the trial court significantly misapplies the law or clearly errs in a material factual finding, the trial court's exercise of discretion can be affirmed only if the appellate court can conclude that, had the trial court used the correct facts and legal analysis, it would have had no discretion to reach a different judgment.

*State v. Pickett*, 288 Ga. 674, 679 (2) (d) (706 SE2d 561) (2011).

In its order on remand, the trial court acknowledged that *Barker* frames the analysis of a constitutional speedy-trial claim and that the presumptive-prejudice threshold was crossed, and the court considered the relevant factors. However, the court began its analysis by stating that a defendant cannot prevail on his speedy-trial claim where no prejudice has been shown. Specifically, the trial court stated:

[Appellant] is asking the court to dismiss a serious murder case based on the longevity of the case, where no prejudice has been shown. That is not the purpose of the [Sixth] Amendment[;] therefore, because [Appellant] cannot rely on the age of the case alone, yet attempts to do so, his argument in that regard fails.

This is not the law. See *Doggett v. United States*, 505 U.S. 647, 655 (112 SCt 2686, 120 LE2d 520) (1992) ("[A]ffirmative proof of particularized prejudice is not essential to every speedy[-]trial claim."); *Pickett*, 288 Ga. at 677 (2) (c) (4) ("A defendant need not show demonstrable prejudice to prevail on a speedy[-]trial claim.").

In addition to misstating the law, the trial court failed to explicitly or clearly weigh each *Barker* factor — e.g., against the State, neutrally, or against Appellant, and lightly or heavily. See *Jenkins v. State*, 294 Ga. 506, 513 (2) (c) (755 SE2d 138) (2014) ("This test compels the examining court to consider and weigh all four factors in the context of the particular circumstances of the case at issue."); *State v. Johnson*, 291 Ga. 863, 865-866 (2) (b) (734 SE2d 12) (2012) (regarding weights, "[a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government, whereas an unintentional delay, such as that occasioned by the mere negligence of the prosecuting attorney or the overcrowded docket of the trial court, should be weighted less

heavily" (citation and punctuation omitted)); *State v. Alexander*, 295 Ga. 154, 158-159 (2) (c) (758 SE2d 289) (2014) (regarding weights, a defendant "must assert [his right to a speedy trial] with reasonable promptness" and the failure to do so "ordinarily weighs heavily against the defendant," but "the weight to be attributed to [the assertion-of-the-right] factor may be mitigated in some cases").

While it is clear from the trial court's order on remand that it implicitly weighed the prejudice factor heavily against Appellant, the court's factual findings and legal conclusions as to the other three factors are unclear. For example, in one of the introductory paragraphs of the order, the court found that "[t]estimony and evidence were presented at hearings held on May 9, 201[8],[4] November 30, 2017,[5] October [24], 2018[6] and October 5, 2020,"

[4] The trial court's order stated the hearing occurred on May 9, 2017. This is likely a typographical error as Appellant filed his speedy-trial motion in September 2017, and in *Redding I*, we acknowledged that "[t]he trial court held a hearing — apparently on May 9, 2018 — but did not make any ruling at the time of the hearing." 309 Ga. at 128 (3).

[5] In *Redding I*, we noted that "[t]he trial court scheduled a hearing on the motion for November 30, 2017, but, as the State concedes, there is no record that a hearing was held that day." 309 Ga. at 128 (3).

[6] Although the trial court said only that a hearing took place in October 2018, the record shows that the hearing occurred on October 24.

and that "[e]ach time after said hearing, either one or both sides requested more time to research issues which were discussed at said hearing." This statement lacks clarity as to whether Appellant or the State or both requested more time to research issues, and to the extent that only the State requested more time, the resulting delay would not weigh against Appellant. See *Henderson*, 310 Ga. at 236 (2) (b) ("Whether the defendant or the State bears the primary responsibility for delay in reaching trial is pivotal in evaluating the strength of a constitutional speedy[-]trial claim, as it can color the consideration of all other factors." (citation and punctuation omitted)). Additionally, the trial court failed to address the amount of time involved in each delay, i.e., whether Appellant or the State or both requested a one-day delay or a two-month delay to "research issues."

Similarly, in the portion of the order addressing the length-of-the-delay factor, the trial court stated that "[m]any times, [Appellant] requested delays."[7] This statement lacks clarity as to

_____

[7] We address the trial court's conflation of the *Barker* factors further

9

when Appellant requested delays and the amount of time involved in each resulting delay. And, in this same portion of the order, the trial court did not indicate the amount of time caused by the State's delay in "gather[ing] autopsy reports, drug and alcohol reports, witness statements, phone records, and computer records."[8]

Further, in the portion of the order addressing the assertion-of-the-right factor, the trial court found that "[Appellant] asserted his right to a speedy trial for the first time after about one year after arrest," which was when he filed his speedy-trial motion. Appellant contends that the trial court erroneously ruled that he delayed in asserting his right to a speedy trial. However, it is not clear what this finding meant or how the court weighed this factor — i.e., whether the phrase "for the first time" was simply a reference to Appellant first filing his constitutional speedy-trial motion or an

---

below.

[8] We note that the evidence at trial showed that the witness statements of Jason Bellamy, Debbie Render, and LaKendra Davis, including their identifications of Appellant in photographic lineups, were completed in September 2016; Davis's autopsy report was completed in December 2016. Thus, they were both completed within three months of Appellant's arrest.

emphasis on Appellant's purported delay in asserting his right to a speedy trial.[9]

It is not the role of an appellate court to weigh the *Barker* factors in the first instance. See *Pickett*, 288 Ga. at 679-680 (2) (d). Cf. *Johnson*, 291 Ga. at 865 (2) (a) (when the trial court failed to explicitly weigh a factor, this Court may interpret the weight assigned when the trial court was clear in its findings). Based on the discussion above, we are unable to ascertain how the trial court weighed three of the *Barker* factors, i.e., the length of the delay, the reason for the delay, and the assertion of the right.

Further, as we observed above, the trial court conflated the *Barker* factors when it considered them. In the portion of the order considering the length-of-the-delay factor, the court made some statements regarding the reasons for the delay; we also note that the trial court did not explicitly calculate the length of the delay.

---

[9] We note that in the last sentence of the order, the trial court ruled "there is no deprivation of [Appellant's] speedy[-]trial rights" based on "each inquiry standing alone," which may mean the court erroneously weighed this factor against Appellant. But, again, the court's order is unclear.

11

And, in the portion of the order considering the assertion-of-the-right factor, the trial court made some statements regarding prejudice and the reason for the delay. We remind litigants and trial courts that each *Barker* factor should be considered separately even though they may sometimes be intertwined. See *State v. Porter*, 288 Ga. 524, 532 (2) (d) (705 SE2d 636) (2011) (courts should not conflate the *Barker* factors).

Finally, we note that in addressing the prejudice factor, the trial court found that when Appellant was arrested in this case, he was "also arrested and incarcerated during the entire period on a violation of probation case" and "the hold for violation of probation prevented him from making bond."[10] The court then ruled that due to this probation hold, Appellant "would have been incarcerated . . . regardless of the new charge of murder and [oppressive pretrial]

---

[10] As quoted above, in *Redding I*, we stated that Appellant "was granted a bond on March 2, 2017, but he apparently was unable to post the bond amount and so remained in jail." 309 Ga. at 128 (3). However, the record supports the trial court's finding that a probation hold also prevented Appellant from making bond because his counsel stated at the October 24, 2018 hearing that he remained in custody during the pendency of his case due to a "[v]iolation of probation."

incarceration was not a significant factor in assessing prejudice to [Appellant]." Appellant, citing *Johnson v. State*, 313 Ga. App. 895 (723 SE2d 100) (2012), contends the trial court erred in considering his probation hold in its examination of the prejudice factor. We agree. In *Johnson*, the Court of Appeals held:

> With regard to a defendant incarcerated on other charges, the Supreme Court of the United States has opined that a delay in bringing such a person to trial could aggravate and compound the three concerns of prejudice. Specifically, the Supreme Court has suggested that "the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed." Additionally, "the duration of his present imprisonment may be increased, and the conditions under which he must serve his sentence greatly worsened, by the pendency of another criminal charge outstanding against him." Accordingly, the trial court erred by weighing this factor in favor of the State because Johnson was incarcerated on other charges, and the court must reevaluate this factor on remand.

313 Ga. App. at 904 (2) (d) (i) (quoting *Smith v. Hooey*, 393 U.S. 374, 378 (89 SCt 575, 21 LE2d 607) (1969)). We agree with the reasoning of the Court of Appeals in *Johnson*. See *Ruffin v. State*, 284 Ga. 52, 58 (2) (b) (i) n.25 (663 SE2d 189) (2008) (citing *Hooey*, 393 U.S. at

13

378). We conclude the trial court erred in ruling that Appellant's probation hold precluded the need to assess prejudice associated with oppressive pretrial incarceration.

As we stated in *Redding I,* Appellant's "speedy[-]trial claim does not strike us as so patently meritless that its denial is certain and that a remand for consideration of this issue would be a waste of judicial resources." 309 Ga. at 129 (3). Accordingly, because the trial court misstated and misapplied the law regarding the prejudice factor, failed to weigh each *Barker* factor, and conflated its consideration of some of the factors, we vacate the trial court's order denying Appellant's constitutional speedy-trial motion, and we remand this case again for the entry of an order containing appropriate findings of fact and conclusions of law on the speedy-trial claim. See id. at 129-130 (3).[11]

*Judgment vacated and case remanded with direction. All the Justices concur.*

---

[11] If the trial court denies Appellant's speedy-trial motion, Appellant may file a notice of appeal, and in his new appeal, he may raise again the issues raised in his current appeal that we do not address today, as well as any issue arising from the proceedings on remand.

Decided May 17, 2022.

Murder. Muscogee Superior Court. Before Judge Peters.

*Kennon Peebles, Jr.*, for appellant.

*Frederick Lewis, Sadhana P. Dailey, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General*, for appellee.